**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| OSCAR AVINA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-1885 |
| | § | |
| JP MORGAN CHASE BANK, N.A, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Oscar Avina alleges that his former employer, JP Morgan Chase Bank, N.A. ("Chase"),

violated Title VII, 42 U.S.C. § 2000e, *et seq.*, and ERISA, 29 U.S.C. § 1001 *et seq.*  Avina

complains primarily of mistreatment by two supervisors, Alma Trujillo and Rosemary Everitt, that

he alleges created a sexually hostile work environment;  Avina was the only male in a ten-person

department.  Avina alleges that he was also denied disability benefits and not informed other

benefits to which he was entitled.  Avina alleges that after he filed a complaint with the EEOC, he

was fired in retaliation for that complaint and to avoid paying certain benefits.

Chase has moved for summary judgment, arguing that the record shows no basis for the

claims Avina asserts, as a matter of law.  (Docket Entry No. 25).  Avina has responded, (Docket

Entry No. 29),[1] and Chase has replied, (Docket Entry No. 31).[2]  Chase has also moved to strike

---

[1]  In his response, Avina argues that Chase should not receive any declaratory or injunctive relief and that Chase should not receive attorney's fees or costs.  (*Id.* at 5–8).  Chase has made it clear that it is not seeking declaratory or injunctive relief.  (Docket Entry No. 31 at 10).  This court will consider Avina's arguments against attorney's fees and costs if Chase requests such relief.  Avina's request is denied.

[2]  In its reply to Avina's response to the summary judgment motion, Chase moves to strike Avina's response because it bears no signature.  (*Id.* at 10).  That motion is denied.

portions of an affidavit that Avina attached to his response.  (Docket Entry No. 30).  Avina has responded, (Docket Entry No. 34), and Chase has replied, (Docket Entry No. 36).  The parties presented oral arguments  at a hearing before this court on February 26, 2010.  (Docket Entry No. 40).

Based on the pleadings, the motions and responses, the record, and the applicable law, this court grants Chase's motion for summary judgment and denies its motion to strike as moot.  Final judgment is entered by separate order.  The reasons for these rulings are set out below.

## I.     The Motion for Summary Judgment

### A.      The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf*, *Inc. v.  Nike*, *Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *See Celotex*, 477 U.S. at 325.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir.  2009) (quotation omitted).  "If the moving party fails to meet

[its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir.  2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

B.        **The Summary Judgment Evidence**[3]

Avina began working for JPMorgan in 1990 in New York.  In 1999, when JPMorgan moved its corporate accounts payable department to Houston, Avina applied for and obtained a position with the research group of that department.  Avina began working for that department in Houston

---

[3]   The summary judgment evidence consists of: Avina's deposition (Docket Entry No. 25, Ex. B); a certification provided by Avina's doctor to Chase (*Id.*, Ex. C; Docket Entry No. 29, Ex. A); a March 29, 2007, letter from Chase to Avina's wife explaining why it would not allow Avina further leave (Docket Entry No. 25, Ex. D); the March 28, 2007, denial of Avina's appeal of Chase's decision not to allow further leave (*Id.*, Ex. E); a February 20, 2007, letter notifying Avina that he would be terminated if he did not return to work by February 27 (*Id.*, Ex. F); Avina's February 5, 2007, charge of discrimination (*Id.*, Ex. G); Avina's April 11, 2007 amended charge of discrimination, amended to allege retaliation (*Id.*, Ex. H); and Avina's affidavit (Docket Entry No. 29, Ex. B).

Chase has moved to strike Avina's affidavit.  (Docket Entry No. 30).  In evaluating Chase's motion for summary judgment, this court has considered all of Avina's affidavit, which is largely duplicative of his deposition.  Because Chase is nonetheless entitled to summary judgment, the motion to strike is denied as moot.

in 1999.

In 2004, JPMorgan relocated the department to India and laid off most of the employees in Avina's research group.  Avina was offered, and accepted, a new position, with the Commercial Loan Services department, as a commercial loan operator.  Avina was one of ten operators and the only man.

Avina alleges that his mistreatment began under Alma Trujillo, his supervisor from 2004 to 2006.  Avina asserts that Trujillo allowed a female coworker to leave thirty minutes early "every day" for a class, but told him that he would have to finish all his work first before attending a 5:30 accounting class.  (Docket Entry No. 25, Ex. B at  15).  Avina acknowledged that he did not know if Trujillo ever told the coworker that she had to finish her work before leaving early to attend class. (*Id.* at 16).  Avina asserted that Trujillo once took a "hostile approach" toward him after he forgot to pick up documents one morning.  (*Id.*).  On another occasion, Trujillo blamed Avina for not sending an e-mail, which  "devastated" him.  (*Id.* at 16–17).  Trujillo's belief that Avina had not done so was mistaken.  (*Id.*).  On another occasion, Trujillo gave Avina a new assignment but told his coworker, who knew how to do the assignment, not to help him, even though Trujillo originally told Avina to ask the coworker for help.  (*Id.* at 17–18).  Trujillo ultimately helped Avina complete the assignment, leaving Avina wondering why she did not tell him how to do the task from the beginning.  (*Id.* at 18).  In his deposition, Avina described the incident as an example of how Trujillo was "always giving me the run-around to do . . . my job better."  (*Id.*).  Although Avina asserted generally that there were other examples of mistreatment, he did not identify or describe them.  (*Id.*). Avina asserts generally that Trujillo was more "rude, mean, distant, and unprofessional" in her exchanges with him than she was with other members of the department.  (Docket Entry No. 1).

4

Avina acknowledges, however, that Trujillo did not issue him any written warning or discipline him during the two years of her supervision. (Docket Entry No. 25, Ex. B at 16–18). On one occasion, she issued an instruction to be "very careful next time" when Avina incorrectly set up an invoice. (*Id.*, at 20). Avina asserts that the treatment amounted to a sexually discriminatory and hostile work environment because he was treated more harshly than his female coworkers. (*Id.* at 17, 18).

In October 2006, Avina was transferred to the Special Credits department. The transfer was due to another internal restructuring that eliminated Avina's position. Chase transferred Avina to another position so that his employment could continue; four of Avina's coworkers in the CLS department lost their jobs. Avina began reporting to Rosemary Everitt when he moved to the Special Credits group in October 2006. (Docket Entry No. 29, Ex. B at 3). Avina worked under Everitt's supervision until early December 2006, a two-month period.

Avina asserts that at first, he and Everitt got along well, but after a conversation between Avina and Trujillo, Everitt began treating him differently than his coworkers, requiring him to do more work, subjecting his work to more scrutiny, and yelling at him. (Docket Entry No. 25, Ex. B at 19). As to specifics, Avina identifies his first problem with Everitt as occurring shortly after he began working for her. (*Id.* at 10). Avina asserts that when he started working for Everitt, he was confused about his duties. (*Id.*). On one occasion, Avina received three transactions from customers he did not recognize. (*Id.*). Everitt told him not to process these transactions. When Carol Payne, a vice president in the Special Credits group, asked Avina why he did not process them,  he responded that he followed Everitt's instructions. (*Id.*) After Payne and Avina met, Avina alleges that Everitt yelled at him, saying in "a very unprofessional way" that she had told him to "process all of those items," and then left. (*Id.*). Avina alleges that after this incident, Everitt required him

to print a record of every transaction he processed. (*Id.* at 14). Avina asserts that when he complained to Everitt that the process was inefficient, Everitt told him, "in a mean way," that she did not care. (*Id.*). Avina also asserts that his coworkers were not required to print their work. Avina asserts that his coworkers told him that Everitt had a file documenting his mistakes. He acknowledges that he was also told that Everitt had kept similar records on a female employee. (*Id.* at 19).

Avina first reported his complaints to someone outside his office at the end of October 2006. Avina talked to Bob Bradford, a senior vice president in the Special Credits group. (*Id.* 13). Avina told Bradford of the difficulties with Everitt. (*Id.*; Docket Entry No. 29, Ex. A at 4). The same day, after the meeting, Avina asserts that Everitt asked him in a "rude way" whether he was going to finish his work for the day before 5:00 p.m., because she did not want to authorize any overtime pay. (Docket Entry No. 25, Ex. B at 13–14). Despite his complaints about Everitt, Avina acknowledges that she did not yell at him for failing to finish his work, reprimand him, or discipline him. (*Id.* at 23).

Two days later, on November 3, Avina went to the emergency room feeling ill after telling Everitt that he needed to leave. (Docket Entry No. 29, Ex. B at 4). Either the day after the last incident with Everitt or right after he returned to work, Avina told Payne that he needed to "go home . . . to seek professional help." (Docket Entry No. 25, Ex. B at 24). Avina told Payne that Everitt's harassment was causing him to feel ill. Payne told him to "take it up with HR." (*Id.*). Avina met with a human resources representative, Brenda McKee, on November 13. He told her of his complaints about Trujillo and Everitt and asked her if he would still be eligible for a severance package that JPMorgan had offered him in 2004. (*Id.*). McKee responded that if he wanted a

6

severance package he would have to "sign a piece of paper."  Avina said that he would think about it.  (*Id.* at 25).

On December 1, Avina received an e-mail from Everitt criticizing him for sending a fee statement to the wrong recipient.  (Docket Entry No. 29, Ex. B at 5).  Nearly in tears after telling Everitt that her harassment was affecting the quality of his work, and fearing that Everitt was collecting a list of his infractions to justify his termination, Avina went to Bradford to complain about Everitt's actions.  (*Id.*).  Bradford sent Avina to McKee in human resources.  (*Id.*).  Avina told McKee he would like to take the severance package, but McKee told him that was no longer an option.  (Docket Entry No. 25, Ex. B at 25).  Avina asserts that he was "disappointed that he had complained to upper management about the harassment that was going on and nobody did anything about it," and felt like he was going to "drop dead," so he asked Bradford if he could go home.  (*Id.*).  Bradford gave him permission to do so.  (*Id.*).  December 1 was the last day Avina worked at Chase.  (*Id.* at 27).

On December 7, Dr. Carlos Guerra saw Avina and diagnosed him as having depression and panic disorder and prescribed medication.  (*Id.* at 22).  After his diagnosis, Avina requested leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, which Chase granted.  (*Id.* at 27).  February 5, 2007, was the return-to-work release date specified in the medical certification Dr. Guerra provided.  (*Id.*; *id.*, Ex. C).  In that certification, Dr. Guerra stated that he expected Avina to require six to twelve additional "treatments."  (*Id.*).

On February 5, 2007, Avina filed an EEOC complaint.  (Docket Entry No. 25, Ex. G).  His complaint checked two boxes, one for discrimination based on sex and one for retaliation. (*Id.*).  In the complaint, Avina stated as follows:

7

> I.      Since on or about 2005, I worked in the Commercial Loan Department under the supervision of Alma Trujillo.  While under the supervision of Ms. Trujillo I was subjected to different terms and conditions as compared to female workers.  Some example of the difference in treatment include, but are not limited, the denial of training, heavier assignments of work, and the denial to attend college courses.  In comparison Ms. Trujillo would work side by side with my female coworkers and train them.  She would assign them less work ad allow female coworkers to leave on their scheduled time to attend college classes.  After opposing this difference in treatment I was subjected to retaliation in the form of harassment, belittling, and verbal abuse.
>
> II.      I made my concerns of what I perceived to be discrimination and harassment known to upper management.  Management was aware that I sought medical attention for stress resulting from Ms. Trujillo's harassment.  I was encouraged not to quit and that the situation would not be reviewed.  On or about October 15, 2006, I was reassigned to work in a different department which was located on a different floor.  After my transfer I personally witnessed Ms. Trujillo visit my new supervisor on multiple occasions.  Then, the verbal harassment continued.  I complained to members of management and the harassment increased.  Consequently, I had to take a stress leave.  I believe management was aware or should have been aware of the discriminatory action taken against me but failed to take appropriate corrective action.

(*Id.*).

While on his FMLA leave, Avina applied for short-term disability benefits.  (*Id.*, Ex. B at 27).  Chase denied this application, explaining in a letter to Avina dated February 8, 2007 that "there was very little information about your ongoing treatment that supported your inability to work while you were in treatment."  (*Id.*, Ex. E).[4]  In a March 28, 2007 response to a letter from Avina's wife, Chase further explained that although it accepted that Avina was experiencing serious mental impairment, it required weekly treatment to approve benefits, and the documentation provided

---

[4] In his response, Avina says he initially received short-term disability benefits.  (Docket Entry No. 29 at 3). This is not competent evidence for summary judgment.  *See* FED. R. CIV. P. 56(c)(2).

8

showed that Avina was only seen "every three to four weeks." (*Id.*, Ex. D at 1).

On February 20, 2007, Marianne Giersch in the Chase human resources office sent Avina a letter following up on a telephone conversation of February 15 in which Avina stated that he knew his claim for short-term disability pay benefits had been denied. The letter stated that because Avina had no estimated return to work date, his employment would be terminated on February 27 unless he was approved for additional unpaid leave. The letter invited Avina to contact Giersch if he had been released to return to work or if he believed he qualified for unpaid leave under the Chase policy. (*Id.*, Ex. F). Avina did not respond to this letter. He was fired on February 27. (Docket Entry No. 29, Ex. B at 1). He amended his EEOC charge, checking a third box marked retaliation. (Docket Entry No. 25, Ex. H). This lawsuit was filed on June 12.

### C.      Avina's Title VII Claim

Under Title VII, it is illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Avina's complaint alleges discrimination based on national origin, sex, age, and disability. Of these bases, only national origin and sex are actionable under Title VII.[5] Although Title VII does permit claims for national-origin discrimination, Avina did not include that claim in his EEOC charge. (Docket No. 25, Ex. G.) As Avina acknowledged in the hearing before this court, this failure to exhaust administrative remedies means he cannot seek damages for them now. *See Taylor v. Books A*

---

[5] Avina has not moved this court for leave to amend his complaint to proceed under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, or the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.* Even if he were to do so, such a motion would be futile for the same reasons that his Title VII claim fails. *Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 368 (5th Cir. 2010) ("[I]t is within the district court's discretion to deny the amendment as futile  if there is no reasonable basis to predict that the plaintiff will be able to recover against the non-diverse, non-indispensable party sought to be added as a defendant.").

*Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002).

"The filing of an administrative complaint is a prerequisite to a Title VII suit." *Thomas v. Atmos Energy Corp.*, 223 Fed. Appx. 369, 376 (5th Cir. 2007); *Harris v. Honda*, 213 Fed. Appx. 258, 261 (5th Cir. 2006); *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). "A Title VII cause of action may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1992); *Pacheco*, 448 F.3d at 789 (quoting *Fine* with approval). An EEOC charge must be filed within 300 days of the alleged discrimination. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

In determining whether an allegation in a complaint falls within the scope of an EEOC charge, a court must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Pacheco*, 448 F.3d at 789. The  directive to construe EEOC charges liberally, *see, e.g.*, *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 n.7 (5th Cir. 1994); *Price v. Sw. Bell Tel. Co.*, 78 (5th Cir. 1982); *Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112 (5th Cir. 1981), is not a directive to put a thumb on the scale in favor of the plaintiffs in applying the rule.  "[F]or the most part, the desired liberality is achieved by application of the rule that courts will look beyond the scope of the charge's language to the scope of the [administrative]  investigation which can reasonably be expected to grow out of the charge." *Pacheco*, 448 F.3d at 789 n.9; *see also Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) ("[A]llowing a Title VII action to encompass claims

outside the reach of the EEOC charges would . . . frustrate the EEOC's investigatory and conciliatory role."); *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) ("[T]he primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in an attempt to achieve non-judicial resolution of employment discrimination claims." (quoting *Pacheco*, 448 F.3d at 788–89 (5th Cir. 2006) (alterations omitted))).  Claims set forth in the charge do not exhaust claims in a subsequent lawsuit unless they are "like or related" the claims in the charge.  *McClain*, 519 F.3d at 273.  A discriminatory act alleged in a lawsuit but not included in an EEOC charge is not "like or related to" acts that are alleged in an EEOC charge simply because both are based on the same type of discrimination.  In a sex discrimination case, the Seventh Circuit explained that "[b]ecause an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination."  *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994); *see also McClain*, 519 F.3d at 274 (charge alleging disparate treatment did not exhaust disparate impact claim); *Pacheco*, 448 F.3d at 792 (same); *Stanley v. Univ. of Tex. Med. Branch, Galveston, Tex.*, 425 F. Supp. 2d 816, 823 (S.D. Tex. 2003) (holding that allegation of race and sex discrimination did not exhaust with respect to harassment because it "left [the EEOC] in the dark concerning the substance of plaintiffs' claims—contrary to Title VII's drafters' intentions for the role of the EEOC").     In the present case, there is no basis to conclude that Avina's sex discrimination EEOC charge would reasonably lead to an investigation of a national-origin discrimination charge.  And although Avina alleged age discrimination in this lawsuit, he did so under Title VII, not under the ADEA.   The only claims before this court are for sex discrimination, including a sexually hostile work environment.

11

### 1.    Hostile Work Environment

Avina claims that Trujillo and Everitt's harassment created a hostile work environment.  As the Fifth Circuit has explained,

> A plaintiff who alleges a hostile work environment  claim pursuant to Title VII must typically prove five elements: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and did not take prompt remedial action.  Proof of the fifth element is not required where, as here, the purported harasser is a supervisor.

*Reine v. Honeywell Int'l Inc.*, 362 F. App'x 395, 397 (5th Cir. 2010) (citing *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 393, 393 & n.2 (5th Cir.2007)).

In its motion for summary judgment, Chase first focuses on the fourth element, contending that the kinds of actions Avina alleges and describes in the summary judgment evidence do not rise to the level to affect a "condition or privilege of employment."  To be actionable, a work environment must be both subjectively and objectively hostile.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).  Avina's reactions to the way Trujillo and Everitt treated him show his subjective belief that the environment was hostile.  But a subjective belief is insufficient.  Whether a work environment is objectively hostile depends on the totality of the circumstances; "workplace conduct is not measured in isolation."  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).  Relevant circumstances may include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 23.  Title VII is not a "general civility code," and employees must tolerate the "ordinary tribulations of the workplace, such as the sporadic use

12

of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations and quotations omitted).  Only when conduct is "so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace" can a plaintiff get relief under Title VII. *Shepard v. Comptroller of Pub. Accounts of the State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999) (quoting *Weller v. Citation Oil & Gas Corp*, 84 F.3d 191, 194 (5th Cir. 1996); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998) (requiring "a showing of severe or pervasive conduct" for a hostile environment claim).   For example, a continuing pattern of hostile comments unrelated to work survives survive summary judgment; evidence of sporadic work-related criticisms does not. *Compare EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 400–01 (5th Cir. 2007) (holding summary judgment was not warranted when a Muslim employee alleged that coworkers called him "Taliban" multiple times a day, called him "Arab" though he was Indian, and mocked his religious beliefs and practices, and that a supervisor wrote that he was "acting like a Muslim extremist" in an official reprimand), *with Kang v. Bd. of Supervisors of La. State Univ.*, 75 F. App'x 974, 976–77 (5th Cir. 2003) (summary calendar) (holding that unjustified criticisms of an employee in front of coworkers does not as a matter of law create a hostile work environment).

Under this standard, the mistreatment Avina alleges and that is described in the competent summary judgment evidence does not come close to raising a fact issue under Title VII.  Avina's primary complaint is that Trujillo and Everitt were rude to him and generally behaved unprofessionally.  Title VII does not, however, require supervisors to be polite or even civil. *Faragher*, 524 U.S. at 788;  *see also Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270 (5th Cir. 1998) ("Contrary to the children's rhyme, all insults, like sticks and stones can hurt, but this does

13

not mean that all insults are tortious."); *Soliz v. Assocs. in Med., P.A.*, Civ. A. No. H-06-2785, 2007 WL 2363304, at *5–*6 (S.D. Tex. Aug. 17, 2007) (holding that yelling at the plaintiff in front of other employees did not create a hostile work environment). Moreover, the summary judgment evidence is that the criticisms Trujillo and Everitt made were in response to mistakes Avina actually made or mistakes they thought he made.  (Docket Entry No. 25, Ex. B at 14, 20).  Such job-related criticisms are far different than the type of sex-based remarks that tend to give rise to fact issues precluding summary judgment on hostile work environment claims.  *See Kang*, 75 F. App'x at 976–77.

Avina's allegations that Trujillo did not give him sufficient training and required him to complete his work before leaving to attend an accounting class do not raise fact issues as to a hostile work environment.  The evidence Avina provides shows that Trujillo eventually showed him how to complete the tasks at issue and did not discipline him in any way.  Trujillo's requirement that Avina finish his work before attending his accounting class is little more than a supervisor insisting that an employee do his job, particularly given the absence of evidence that Trujillo did not require female employees to finish their work before leaving work early to attend college classes.   The same is true of Everitt telling Avina that she wanted him to finish his work during regular working hours because she did not want to have to pay overtime.  Everitt's requirement that Avina do "extra" work, such printing his transactions, does not give rise to a fact issue as to a hostile work environment. *See Williams v. Barnhill's Buffet, Inc.*, 290 F. App'x 759, 762 (5th Cir. 2008) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir. 1999)).  Viewing all these actions together, they far short of the kinds of "severe and pervasive" conduct that can create a hostile work environment within the meaning of Title VII. *See  Shepard*, 168 F.3d at 874.

14

Avina's only argument in response is that the severity of his reaction shows that the treatment he received created a hostile work environment. Under *Harris*, unreasonable interference with the employee's ability to do his job is a factor to consider, but Avina's subjective reaction "alone is insufficient to meet the 'reasonable employee' criteria." *Jaetzold v. Glazer Wholesale Drug Co.*, No. 98-21110, 1999 WL 1067064, at *2 (5th Cir. Oct. 13, 1999) (citing *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 n.19 (5th Cir. 1993)). To hold otherwise would blur the distinction between the subjective and objective inquiries in harassment cases. *Cf. Barrow*, 10 F.3d at 297 n.19 ("This test is objective; the question is not whether this employee felt compelled to resign, but whether a reasonable employee would have felt so compelled.").

Avina's claim fails for a second reason: the record defeats a showing that the treatment he complains of was "because of" his sex. When asked why he thought Trujillo treated him differently, he responded, "I don't know why." (Docket Entry No. 25, Ex. B at 18). The only explanation he offered for Everitt's treatment was the conversation he witnessed between her and Trujillo, though he did not hear what they said. A transfer of Trujillo's assumed animus toward Avina does not show sex-based animus or discrimination. Even accepting that Avina believed Trujillo and Everitt treated him rudely and unprofessionally because he is male, subjective belief "cannot import [sex-based] animus into [his supervisors'] conduct." *Lyles v. Tex. Alcohol Beverage Comm'n*, No. 09-20714, 2010 WL 2103006, at *3 (5th Cir. May 24 2010); *see also Reine*, 362 F. App'x at 397; *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). That he was the only man in an otherwise all-female work environment and was treated differently is not enough to raise a fact issue that he was treated differently *because* he is a man. The evidence shows that Everitt kept records on at least one other employee besides Avina, and that employee was female. There is no evidence that Trujillo allowed

female employees to leave work without completing their job tasks to attend classes while forbidding Avina from dong so.  In short, there is no evidence raising a fact issue that Avina was treated differently because of his sex.  *Snoddy v. City of Nacogdoches*, 98 F. App'x 338, 344 (5th Cir. 2004) (rejecting comparison between of the plaintiff and an employee of the opposite sex because they no evidence suggested their cases were otherwise similar); *Steinhauser v. KETK*, Civ. A. No. 9:09-CV-49, 2010 WL 519745, at *8 (E.D. Tex. Feb. 9, 2010) (same).

### 2.       Disparate Treatment

When a plaintiff attempts to prove allegations of discrimination through indirect or circumstantial evidence, the claims are considered under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), recently modified in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), and *Rachid v. Jack in the Box, Inc*., 376 F.3d 305 (5th Cir. 2004). Under the modified *McDonnell Douglas* approach, the plaintiff has the initial burden of making a *prima facie* showing of sex discrimination.  *Abarca v. Metro. Transit Auth*., 404 F.3d 938, 941 (5th Cir. 2005); *Rachid,* 376 F.3d at 312.  A plaintiff satisfies this burden by showing that: (1) he is a member of a protected group; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated differently from those outside the protected class.  *See Frank v. Xerox Corp*., 347 F.3d 130, 137 (5th Cir.2003); *see also Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005) ("To establish a *prima facie* case of discrimination under § 1981, Appellants must establish that the: (1) are members of a protected group; (2) were qualified for the position held; (3) were discharged from the position; and (4) were replaced by persons outside of the protected group.").  If a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse employment decision. *Cullwell*

16

*v. City of Fort Worth*, 468 F.3d 868, 873 (5th Cir. 2006).  If a defendant can produce such evidence, the presumption of discrimination dissolves.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000); *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir.2002).  The plaintiff must then identify or offer evidence to create a fact issue "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)."  *Rachid*, 376 F.3d at 312 (internal quotation and alteration marks omitted); *see also Cullwell*, 468 F.3d at 873; *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (analyzing a Title VII claim under the modified approach).  In a mixed-motive case, if the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus.  *Rachid*, 376 F.3d at 312.  The plaintiff has the ultimate burden of showing a genuine issue of material fact on whether the defendant discriminated against him on the basis of the plaintiff's membership in the protected class.  *Reeves*, 530 U.S. at 143.

Avina does not appear to raise or argue a mixed-motive theory of discrimination.  *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337 (5th Cir.  2007) ("[The plaintiff] did not properly raise her mixed-motive argument below until her motion for new trial.  . . . Because a motion for a new trial cannot be used to argue a case under a new legal theory, the district court was correct in finding that [the plaintiff's] mixed-motive claim was waived."); *Ward v. Midwestern State Univ.*, 217 F. App'x 325, 329 (5th Cir. 2007) (stating that the plaintiffs failure to present any argument related to a mixed-motive alternative at the district court waived any avenue for appeal on that issue).

17

The record does not create a fact issue on intentionally discriminatory disparate treatment. Avina's complaint refers to "continuing discriminatory employment practices," alleging that Trujillo and Everitt "treated him disparately in comparison to other similarly situated employees." (Docket Entry No. 1 at ¶ 9). To the extent that this is an attempt to state an ordinary disparate treatment claim, that claim fails for the same reasons as the harassment claim. The competent summary judgment evidence does not raise a fact issue as to whether Avina was subjected to adverse employment actions oother than his termination or that similarly situated female employees were given preferred treatment. Instead, the summary judgment evidence shows that the actions were insufficient in nature and quantity, and the cause insufficiently tied to sex, to give rise to a disparate treatment claim.

To the extent Avina alleges that Chase discriminated against him on the basis of his sex by refusing him additional FMLA leave and terminating his employment after his leave expired, summary judgment is appropriate here as well. It is unclear that Avina is making such a claim; his allegations of discrimination appear to be limited to his supervisors in 2006, Trujillo and Everitt, and there is no indication that they had any involvement in the decisions made about Avina's FMLA benefits or his termination. But, assuming that Avina has made such a claim and a *prima facie* showing, Chase has provided legitimate nondiscriminatory reasons for its actions. *See Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333–34 (5th Cir. 2005) (noting that *McDonnell Douglas* farmwork applies to FMLA cases unless the plaintiff pleads a mixed-motive theory). Avina failed to provide documents showing a need for additional FMLA leave and he failed to return to work (or even to give a return to work date) after his FMLA leave expired. Avina has failed to raise a fact issue as to whether these reasons are pretextual or whether he was fired because of discrimination

against him because of his sex.

### 3.    Retaliation

Avina also alleges that he was fired in retaliation for filing a complaint with the EEOC. (Docket Entry No. 1, ¶ 12).  Title VII  makes it an unlawful employment practice for an employer to "discriminate against any of his employees . . . because [the employee] has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a).  The elements of a *prima facie* showing of retaliation under Title VII are that the plaintiff: "(1) engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).  If a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to proffer a legitimate nonretaliatory reason for the employment action.  *Id.*  If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation.  *Id.*  The standard of proof on the causation element of a Title VII claim is that the adverse employment action taken against the plaintiff would not have occurred "but for" her protected conduct.  *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005); *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir.2004).

Chase argues that summary judgment is appropriate because Avina has failed to raise a fact issue as to a causal link between his charge and his termination.  The only evidence is temporal proximity, which Chase asserts is insufficient to support an inference of but-for causation.

Chase first argues that the record shows that Giersch, who made the decision to fire Avina, had no knowledge that Avina had filed an EEOC charge.  "If an employer is unaware of an

employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Chaney v. New Orleans Public Facility Management, Inc.*, 179 F.3d 164, 168 (5th Cir.1999) (citing *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir.1994)).  There must be some evidence that Giersch, who Avina does not dispute made the decision to fire him, knew of his protected conduct to give rise to a retaliation claim.  *See Washington v. Veneman* 109 F. App'x 685, 692 (citing *Chaney*, 179 F.3d at 168); *Lara v. Kempthorne*, 673 F. Supp. 2d 504, 520 (S.D. Tex. 2009).  In his deposition, Avina testified that after December 1, 2006, he spoke to no one at Chase other than the employees who handled disability claims and to one other employee in the Special Credits group.  (Docket Entry No. 25, Ex. B at 28).  There is no indication that he spoke to Giersch.  Avina points to no evidence that Giersch knew of his internal complaints about discrimination or about his EEOC charge, and this court's independent review of the record discloses none.  Absent any evidence that the decisionmaker knew of his protected conduct, Avina cannot make a *prima facie* showing or raise a disputed fact issue as to retaliation.

Even if Avina had evidence that Giersch knew of his protected conduct, his only evidence of retaliation is the timing of his termination.  Avina filed his charge on February 5, 2007.  Chase notified him that he would be terminated unless he provided more documentation to support his leave request on February 20, 2007.  (Docket Entry No. 25, Exs. E & G).  "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case retaliation."  *Swanson v. GSA*, 110 F.3d 1180, 1188 (5th Cir. 1997) (citing *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)).  Assuming that this fifteen-day period suffices for a *prima facie* case, *Evans v. City of Houston*, 246

F.3d 344, 354 (5th Cir. 2001), Chase has offered legitimate, nondiscriminatory reasons for firing Avina; he did not report to work even though his leave period was over and did not submit information that would support an extended leave.  (Docket Entry No. 25 at 24; *see also id.*, Ex. F (letter informing Avina he would be terminated if he did not return to work or justify more leave)).  This evidence requires Avina to present more than timing to create a fact issue as to causation.  *Roberson v. Alltel Info. Svcs.*, 373 F.3d 647, 655 (5th Cir. 2004) ("Without more than timing allegations, and based on [the defendant's] legitimately nondiscriminatory reason in this case, summary judgment in favor of Alltel was proper."); *accord Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) ("Again, temporal proximity alone is insufficient to prove but for causation.").   Avina's response to Chase's summary judgment motion points to no additional evidence.  In his deposition, the only basis Avina identified for his belief that Chase had retaliated against him was timing:  "I complained to the Equal Employment Opportunity Commission on February 5, 2007, and I was fired on the same month 2007.  What other thoughts am I going to have to think they are retaliating against me?"  (Docket Entry No. 25, Ex. B at 32–33).[6]  This court's independent review of the summary judgment evidence produces no evidence that would allow a jury to determine that Avina was fired in retaliation for protected conduct.

Summary judgment is granted on the Title VII discrimination and retaliation claims.

**D.     ERISA**

Avina also alleges a "denial of benefits secured by [ERISA]."  (Docket Entry No. 1 ¶ 2).

---

[6]  His testimony continues:

> **Q.** Just because . . . you filed your complaint on the 5th of February, you said what other reason would there be?  Is that what you're saying?
> **A.** Yes.

(*Id.* at 33).

This alleged denial came in three forms: denial of short-term and long-term benefits; failure to inform him of the availability of long-term benefits; and terminating him so that he could not apply for long-term disability benefits.  Chase responds that Avina cannot show that he was entitled to any short-term benefits and admits that he never applied for long-term benefits, and therefore cannot raise a fact issue as to whether he was fired to interfere with his ability to obtain benefits.

### 1.    The Alleged Wrongful Denial of Benefits

Avina's complaint does not explain what was improper about Chase's denial of the ERISA benefits.  In his response to Chase's motion for summary judgment, Avina emphasizes that his doctor "did not unequivocally state that Mr. Avina would be released to return to work on . . . February 5" and that the form the doctor submitted indicated that continuing treatment would be necessary.  (Docket Entry No. 29 at 2–3).  Avina asserts that Chase never asked for more information and he never provided any.

A plaintiff seeking ERISA benefits generally must show that the plan administrator abused discretion in denying the benefits.  *See, e.g.*, *Shexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010).  This in turn generally requires evidence of a misapplication of the plan or that the administrator's decision to deny benefits lacked evidence and was arbitrary.  *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 537–38 (5th Cir. 2007). The Fifth Circuit has repeatedly noted that "the burden is not solely on the administrator to generate evidence relevant to deciding the claim." *See, e.g.*, *Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329, 335 (5th Cir. 2001) (quotations and alterations omitted).  Avina has failed to identify or present any evidence that he was entitled to an extension of short-term benefits or that the decision to deny those benefits, upheld on administrative appeal, was arbitrary.  To the contrary, the only

evidence is that the medical information Avina's own doctor provided showed that he was expected to be able to return to work after a two-month period, or by February 2007.

There is no evidence that Avina ever applied for long-term disability benefits.  He has no recollection of doing so.  (Docket Entry No. 25, Ex. B at 33).  A plan beneficiary cannot sue for a denial of benefits that he did not apply to receive.  *See Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000).

## 2.   The Alleged Failure to Inform Avina of Benefits

Avina also alleges that Chase did not inform him of his right to receive long-term disability rights.  ERISA contains explicit disclosure requirements to allow employees to:

> know[] exactly where [they] stand[] with respect to the plan--what benefits [they] may be entitled to, what circumstances may preclude [them] from obtaining benefits, what procedures [they] must follow to obtain benefits, and who are the persons to whom the management and investment of [their] plan funds have been entrusted.

H.Rep. No. 533, 93rd Cong., 2d Sess. 11, *reprinted in* 1974 U.S. Code Cong. & Admin. News 4639, 4649; *see Firestone Tire & Rubber Co. v. Bruch*, 109 S. Ct. 948, 958 (1989).  Nevertheless, courts have found that "[i]t does not follow [from the disclosure provisions] that Congress intended to excuse individual claimants from exhausting their administrative remedies in those cases where they were never informed of the applicable administrative procedures."  *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1279 (5th Cir. 1990); *see also Bourgeois*, 215 F.3d at 480–81 (citing *Meza*, at 1278–79) (placing burden on the employee to seek benefit information); *Harris v. Trustmark Nat'l Bank*, 287 F. App'x 283 (5th Cir. 2008) (citing (*Meza*, 908 F.2d . at 1279 and *Bourgeois*, 215 F.3d at 480) (same).  Unless Avina can at least raise a fact issue as to whether the employer's failure to provide him with information about the plan "prejudiced him in his efforts to obtain benefits to which he is

otherwise entitled," summary judgment is proper on claims in a lawsuit for benefits denied or for breach of fiduciary duties. *Meza*, 908 F.2d at 1279–80. Avina has made no argument or presented any evidence of such prejudice. This claim fails as a matter of law.

### 3.    The Claim of Wrongful Discharge

Avina's last ERISA claim is that his discharge violated the statute. ERISA makes it "unlawful for any person to discharge . . . a participant or beneficiary for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, ERISA, or the Welfare and Pension Plans Disclosure Act." 29 U.S.C. § 1140. To show improper discharge, Avina must show that Chase acted with "specific discriminatory intent." *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 423 (5th Cir. 2007). Avina's response to Chase's motion for summary judgment does not identify or present any summary judgment evidence creating a fact issue as to "specific discriminatory intent." This court's independent review of the record indicates no such evidence. To the contrary, the only evidence in the record is that Chase fired Avina because he failed to return to work when his FMLA leave expired and failed to present any basis for extending that leave. Avina's claim does not survive summary judgment.

## III.    Conclusion

Chase's motion for summary judgment is granted and the motion to strike is denied as moot. Final judgment is entered by separate order.

SIGNED on September 3, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

24